UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

LYNN A.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

NO. 2:19-CV-0090-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 10, 17). The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

**JURISDICTION**

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that [he or she] is not only unable to do [his

or her] previous work[,] but cannot, considering [his or her] age, education, and

work experience, engage in any other kind of substantial gainful work which exists

in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

1    404.1520(b), 416.920(b).

2         If the claimant is not engaged in substantial gainful activities, the analysis

3    proceeds to step two.  At this step, the Commissioner considers the severity of the

4    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

5    claimant suffers from "any impairment or combination of impairments which

6    significantly limits [his or her] physical or mental ability to do basic work

7    activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

8    416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

9    however, the Commissioner must find that the claimant is not disabled.  *Id.*

10        At step three, the Commissioner compares the claimant's impairment to

11   several impairments recognized by the Commissioner to be so severe as to

12   preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§

13   404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

14   severe than one of the enumerated impairments, the Commissioner must find the

15   claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

16        If the severity of the claimant's impairment does meet or exceed the severity

17   of the enumerated impairments, the Commissioner must pause to assess the

18   claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

19   defined generally as the claimant's ability to perform physical and mental work

20   activities on a sustained basis despite his or her limitations (20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On June 19, 2015, Plaintiff filed an application for Title II disability insurance benefits. Tr. 245-46. On June 26, 2015, Plaintiff filed an application for Title XVI supplemental security income benefits. Tr. 239-44. Both applications alleged an amended onset date of July 31, 2014. Tr. 42. The applications were denied initially, Tr. 155-62, and on reconsideration, Tr. 166-87. Plaintiff appeared at a hearing before an administrative law judge ("ALJ") on October 23, 2017. Tr. 38-80. On May 14, 2018, the ALJ denied Plaintiff's claim. Tr. 12-37.

As a threshold matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2017. Tr. 17. At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 31, 2014, the amended alleged onset date. *Id.* At step two, the ALJ found Plaintiff had the following severe impairments: spinal impairment, fibromyalgia, hypertension, diabetes, headaches, obesity, affective disorder(s), anxiety disorder(s) (including post-traumatic stress disorder), personality disorder(s), somatoform disorder, and substance use disorder. *Id.* At

step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then found Plaintiff had the RFC to perform light work with the following limitations:

> [S]he can never climb ladders, ropes or scaffolds. She cannot work at unprotected heights or in proximity to hazards such as heavy machinery with dangerous moving parts. She can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can occasionally work overhead. She can perform work in which concentrated exposure to vibration or loud noise is not present. She can understand, remember, and carry out unskilled, routine, and repetitive work that can be learned by demonstration, and in which tasks to be performed are predetermined by the employer. She can cope with occasional work setting changes and occasional interaction with supervisors. She can work in proximity to coworkers, but not in a team or cooperative effort. She can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public is not precluded. Within these parameters, she [can] meet ordinary and reasonable employer expectations regarding attendance, production, and workplace behavior.

Tr. 22.

At step four, the ALJ found Plaintiff was not capable of performing past relevant work. Tr. 30. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as semi-conductor die loader, marker, or electrical accessories assembler. Tr. 31-32. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from June 1, 2013 through

May 14, 2018, the date of the ALJ's decision.  Tr. 32.

On March 5, 2019, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed Plaintiff's symptom testimony; and

2.  Whether the ALJ properly weighed the medical opinion evidence. ECF No. 10 at 2.

## DISCUSSION

### A.  Plaintiff's Symptom Testimony

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit her symptom testimony.  ECF No. 10 at 3-16.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be

expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. Tr. 23.

### 1. Evidence of Malingering

The ALJ observed the record contained evidence of malingering. Tr. 20, 25-26, 30. When affirmative evidence that the claimant is malingering is present, the ALJ is not required to provide clear and convincing reasons to reject the claimant's

testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Instead, the ALJ may reject the claimant's symptom testimony merely upon finding evidence of malingering in the record. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

There is a split of authority in the Ninth Circuit's caselaw regarding what type of finding an ALJ must make when evaluating a claimant's symptom testimony in light of evidence of malingering. In 2006, the *Robbins* court held that "unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also Lingenfelter*, 504 F.3d at 1036 (applying the *Robbins* malingering test). However, in 2009, the *Vasquez* court held that the relevant inquiry for evaluating symptom testimony is whether the record presents "evidence of malingering," without requiring the ALJ to make a specific finding of malingering. *Vasquez*, 572 F.3d at 591. Although *Vasquez* did not explicitly overrule *Robbins*, the majority of recent cases dealing with this issue have rejected *Robbins'* requirement of a specific malingering finding in favor of the more deferential requirement that evidence of malingering need only be present in the evidence. *See Ghanim*, 763 F.3d at 1163 n.9 (noting that *Robbins* "is in some tension with" *Vasquez* and applying the

*Vasquez* malingering standard); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (requiring only "affirmative evidence showing that the claimant is malingering" to reject a claimant's testimony without providing clear and convincing reasons); *Carmickle*, 533 F.3d at 1160 n.1 ("As we noted in a recent unpublished decision, the statement in *Robbins*… suggesting that the ALJ must make a specific *finding* of malingering before the clear-and-convincing-reasons standard applies is an anomaly in this Circuit's caselaw.") (emphasis in original). Consistent with the recent majority approach, this Court applies the rule that the ALJ "does not need to make a specific finding of malingering, so long as affirmative evidence in the record shows malingering." *Mobbs v. Berryhill*, No. 3:17-cv-05374-TLF, 2017 WL 6759321, at *6 (W.D. Wash. Dec. 29, 2017) (citing *Carmickle*, 533 F.3d at 1160 n.1).

In this case, the ALJ noted several instances in which the evidence documented malingering. Tr. 20, 25-26, 30. The ALJ noted that during a July 30, 2014 psychological evaluation, Plaintiff was observed to be "marginally cooperative" and was given a rule-out diagnosis of malingering.[1] Tr. 20; *see* Tr.

---

[1] "In the medical context, a 'rule-out' diagnosis means there is evidence that the criteria for a diagnosis *may* be met, but more information is needed in order to

375.  During a July 20, 2016 psychiatric evaluation, Plaintiff was diagnosed with

malingering.  Tr. 20; *see* Tr. 910.  The ALJ also observed that during a September

26, 2016 psychological evaluation, the examiner noted that Plaintiff's test results

"indicate[] lack of true cooperativeness," and Plaintiff was noted to be a "poor

historian."  Tr. 20; *see* Tr. 869-70.  The evaluator diagnosed Plaintiff with

factitious disorder versus malingering, and further explained that "[p]eople with

factitious disorder are experts at faking many different diseases and conditions."

Tr. 869.  The evaluator elaborated that Plaintiff's "medical and psychological

history (per self-report) is inconsistent and changes and does not make sense; no

believable reason exists for the presence of an illness or injury (e.g., she does not

provide detailed symptoms); the illness does not follow the usual course; there is a

lack of healing for no apparent reason; there are contradictory or inconsistent

symptoms; and she deflects when caught in the act of lying and providing different

histories."  *Id.*  The ALJ further noted that when Plaintiff was jailed, she had no

documented psychological complaints and minimized her mental health history,

but when attending a state agency psychological evaluation, she reported a "wide

array of psychological issues."  Tr. 25; *compare* Tr. 990-1053 (Okanagan County

rule it out."  *Carrasco v. Astrue*, No. ED CV 10-0043 JCG, 2011 WL 499346, at

*4 (C.D. Cal. Feb. 8, 2011) (emphasis in original).

Jail medical records do not document mental health complaints) *and* Tr. 428

(January 15, 2015: Plaintiff observed to "minimize[] her mental health history"

during Okanagan County Jail assessment) *with* Tr. 436 (May 27, 2015: Plaintiff

reported experiencing nightmares, sleepwalking, difficulty with recall, and slurred

speech during a DSHS evaluation).  The ALJ's finding discrediting Plaintiff's

symptom complaints is supported by substantial affirmative evidence of

malingering in the record.  The ALJ was therefore not otherwise required to

provide clear and convincing reasons to discredit Plaintiff's symptom testimony.

**B.  Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of John

Arnold, Ph.D., and Catherine MacLennan, Ph.D.  ECF No. 10 at 16-20.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, the opinion of a treating physician carries more weight than the opinion

of an examining physician, and the opinion of an examining physician carries more

weight than the opinion of a reviewing physician.  *Id.*  In addition, the

Commissioner's regulations give more weight to opinions that are explained than

to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. *Dr. Arnold*

Dr. Arnold examined Plaintiff on May 27, 2015; diagnosed Plaintiff with persistent depressive disorder, generalized anxiety disorder with post traumatic stress disorder features, rule out neurocognitive disorder, rule out dissociative disorder, and unspecified personality disorder with antisocial personality disorder,

borderline, and schizotypal features; and opined Plaintiff had moderate limitation

in her ability to understand, remember, and persist in tasks by following detailed

instructions; marked limitation in her ability to perform activities within a

schedule, maintain regular attendance, and be punctual within customary

tolerances without special supervision; moderate limitation in her ability to learn

new tasks; moderate limitation in her ability to perform routine tasks without

special supervision; marked limitation in her ability to adapt to changes in a routine

work setting; moderate impairment in her ability to make simple work-related

decisions; marked limitation in her ability to be aware of normal hazards and take

appropriate precautions; marked limitation in her ability to communicate and

perform effectively in a work setting; marked limitation in her ability to maintain

appropriate behavior in a work setting; marked limitation in her ability to complete

a normal work day and work week without interruptions from psychologically

based symptoms; and moderate limitation in her ability to set realistic goals and

plan independently.  Tr. 436-39.  The ALJ gave this opinion minimal weight.  Tr.

29.  Because Dr. Arnold's opinion was contradicted by Dr. Sanchez, Tr. 492-93,

Dr. Comrie, Tr. 109-11, and Dr. Regets, Tr. 148-50, the ALJ was required to

provide specific and legitimate reasons for rejecting Dr. Arnold's opinion.  *Bayliss*,

427 F.3d at 1216.

    First, the ALJ found Dr. Arnold's opinion was inconsistent with his own

examination findings.  Tr. 29.  A medical opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, the ALJ noted that Dr. Arnold's opinion was based on the mental status examination he administered, the results of which were all within normal limits.  Tr. 29; *see* Tr. 439.  The ALJ reasonably concluded that these results were inconsistent with the significant limitations Dr. Arnold opined.  This finding is supported by substantial evidence.

Second, the ALJ found Dr. Arnold's opinion was not supported by objective explanation.  Tr. 29.  The Social Security regulations "give more weight to opinions that are explained than to those that are not."  *Holohan*, 246 F.3d at 1202.  A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.  Here, the ALJ noted that Dr. Arnold did not provide explanation for his opined limitations, aside from documenting Plaintiff's self-reports and the results of her mental status examination.  Tr. 29; *see* Tr. 436-39.  In light of the inconsistencies between the mental status examination and Dr. Arnold's opined limitations discussed *supra*, the ALJ reasonably concluded that the lack of explanation for Dr. Arnold's opinion further undermined the reliability of his opinion.

Third, the ALJ found Dr. Arnold's opinion relied heavily on Plaintiff's inaccurate self-reporting.  Tr. 29.  A medical opinion may be rejected by the ALJ if

it is inadequately supported by medical findings and based too heavily on the

claimant's properly discounted complaints. *Bray*, 554 F.3d at 1228; *Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). This rule "does not apply in the same

manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040,

1049 (9th Cir. 2017). However, an ALJ may properly reject a medical opinion that

is rendered without knowledge of a claimant's substance abuse. *See Chavez v.*

*Colvin*, No. 3:14-cv-01178-JE, 2016 WL 8731796, at *8 (D. Or. July 25, 2016).

Here, the ALJ noted that Dr. Arnold's opinion was based in part on Plaintiff's own

report of her substance use history, which she described as drinking one beer in

2015 and otherwise never using illegal drugs, engaging in chemical dependency

treatment, or abusing medications. Tr. 29; *see* Tr. 436. However, the ALJ noted

that other evidence in the record documented a history of methamphetamine use

and substance abuse disorder that went into remission around the time of Dr.

Arnold's evaluation. Tr. 29; *see* Tr. 391 (July 31, 2014: Plaintiff "has a long

history of methamphetamines use"); Tr. 824 (June 8, 2016: Plaintiff reported

participating in AA and NA and being clean and sober for one year and one

month); Tr. 908 (July 20, 2016: Plaintiff "previously reported extensive

experimentation with most recreational substances, especially methamphetamine").

The ALJ reasonably concluded that Dr. Arnold's opinion was entitled to less

weight because it was based on Plaintiff's inaccurate report of her substance abuse

history.  This finding is supported by substantial evidence.

2. *Dr. MacLennan*

Dr. MacLennan examined Plaintiff on October 11, 2016; reviewed approximately 300 pages of Plaintiff's medical records; diagnosed Plaintiff with chronic post traumatic stress disorder with dissociation, personality disorder with cluster B traits (antisocial, narcissistic, and borderline), factitious disorder (versus malingering), amphetamine dependence in remission, and amphetamine induced psychotic disorder by history; and opined that Plaintiff would not be able to work full time for at least five years, that Plaintiff should qualify for social security benefits, that Plaintiff could participate in vocational activities that might help her begin to develop a plan for very part time vocational activities, and that Plaintiff was cognitively capable of succeeding in college.  Tr. 861-72.  The ALJ gave Dr. MacLennan's opinions that Plaintiff would not be able to work full time for at least five years and assessment that Plaintiff had significant impairment in her social functioning limited weight.  Tr. 29.  Because Dr. MacLennan's opinion was contradicted by Dr. Comrie, Tr. 109-11, and Dr. Regets, Tr. 148-50, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. MacLennan's opinion.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. MacLennan's opinion was internally inconsistent.  Tr. 30.  An ALJ may reject opinions that are internally inconsistent.  *Morgan v.*

*Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). The ALJ

observed that despite opining that Plaintiff's impairments would prevent her from

working full time for at least five years, Dr. MacLennan also opined that Plaintiff

was then presently capable of succeeding in college. Tr. 30; *see* Tr. 872. The ALJ

reasonably concluded that these opinions were inconsistent. This finding is

supported by substantial evidence.

Second, the ALJ found Dr. MacLennan's opinion was outside of her scope

of expertise. Tr. 30. A medical provider's specialization is a relevant

consideration in weighing medical opinion evidence. 20 C.F.R. §§ 404.1527(c)(5),

416.927(c)(5); *see also Williams v. Colvin*, No. 2:14-cv-00213-FVS, 2015 WL

5039911, at *8 (E.D. Wash. Aug. 26, 2015) (citing *Brosnahan v. Barnhart*, 336

F.3d 671, 676 (8th Cir. 2003)) (finding physical limitations were beyond the

expertise of psychologist). Here, the ALJ noted that although Dr. MacLennan

performed a psychological evaluation, Dr. MacLennan listed a number of

significant physical impairments as being barriers to Plaintiff obtaining

employment. Tr. 30; *see* Tr. 871. The ALJ reasonably concluded that Plaintiff's

physical functioning was outside Dr. MacLennan's scope of expertise. This

finding is supported by substantial evidence.

Third, the ALJ found Dr. MacLennan's opinion was inconsistent with

Plaintiff's activities. Tr. 30. An ALJ may discount a medical source opinion to the

extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02.

Additionally, "[t]he ALJ may reject a medical opinion that is inconsistent with the

claimant's work activity." *Schultz v. Berryhill*, No. 3:16-cv-00757-JR, 2017 WL

2312951, at *4 (D. Or. Apr. 21, 2017) (citing *Valentine*, 574 F.3d at 692-93). The

ALJ noted that despite being diagnosed with substance induced psychosis as early

as 2001, Plaintiff was able to work at substantial gainful activity levels in multiple

semi-skilled occupations, including as a telephone solicitor, a bartender, and an

illustrator, after that diagnosis. Tr. 19-20; *see* Tr. 47, 71-72, 255. The ALJ

reasonably concluded that Plaintiff's past ability to work despite her mental

impairments was inconsistent with the significant limitations Dr. MacLennan

opined. Additionally, the ALJ observed that Plaintiff's daily activities included

spending time with friends, camping, playing video games, walking for exercise,

and traveling by public transportation. Tr. 20, 28; *see* Tr. 45, 765, 906. The ALJ

reasonably concluded that these activities were inconsistent with the significant

limitations Dr. MacLennan opined. The ALJ's finding is supported by substantial

evidence.

Fourth, the ALJ found Dr. MacLennan's opinion was inconsistent with the

longitudinal medical evidence. Tr. 30. Relevant factors when evaluating a

medical opinion include the amount of relevant evidence that supports the opinion

and the consistency of the medical opinion with the record as a whole.

*Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. An ALJ may reject

limitations "unsupported by the record as a whole." *Batson*, 359 F.3d at 1195.

Here, the ALJ noted that when in treatment settings, as opposed to evaluative

settings, Plaintiff routinely displayed normal mood, behavior, speech, and motor

activity. Tr. 20; *see, e.g.,* Tr. 598, 602, 608, 628, 654, 675, 685, 691, 702. The

ALJ also noted that Plaintiff reported no psychological complaints while in

custody. Tr. 20; *see* Tr. 990-1053. The ALJ reasonably concluded that this

evidence was inconsistent with the significant limitations Dr. MacLennan opined.

This finding is supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (**ECF No. 10**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**ECF No. 17**) is **GRANTED**.

The District Court Executive is directed to enter this Order, enter judgment

accordingly, furnish copies to counsel, and **close the file**.

**DATED** December 10, 2019.



THOMAS O. RICE
Chief United States District Judge